

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: August 23, 2021.**

_____

**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **In re:** | § § § | **CHAPTER 11 CASE** |
| **ALAMO STRATEGIC MANUFACTURING, INC.** | § § | **CASE NO. 21-50373** |
| **Debtor.** | § § | |

### ORDER CONFIRMING ALAMO STRATEGIC MANUFACTURING INC.'S PLAN OF REORGANIZATION DATED JUNE 29, 2021

On August 16, 2021, came on for consideration, Alamo Strategic Manufacturing, Inc.'s

Plan of Reorganization Dated June 29, 2021 (the "Plan")[1] filed herein by the Debtor on June 29,

2021 (Dkt. #73).  Present or making appearances at the hearing were counsel for the Debtor, the

Debtor's representative, the Subchapter V Trustee appointed in the case (the "Trustee"), the United

---

[1] Capitalized terms used herein without definition shall have the meanings provided for in the Plan. In addition, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

States Trustee (the "UST"), counsel for Forum Industries, Inc. ("Forum"), counsel for SSM Industries ("SSM"), counsel for Union Funding UT, LLC d/b/a Union Funding UT ("Union Capital"). The Court has reviewed the Plan, and considered the evidence proffered or adduced at the Confirmation Hearing, and the arguments of counsel.

Based upon the foregoing, the Court finds and determines as follows:

1.      The Debtor filed this case on March 31, 2021 (the "Petition Date"), and was qualified to be a Debtor under 11 U.S.C. §109. The Debtor was also qualified and elected to proceed as a small business debtor as that term is defined by 11 U.S.C. §101(51D);

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O) and the Court has jurisdiction to enter a final order with respect thereto. Venue in the Western District of Texas was proper on the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409;

3.      The Court takes judicial notice of the docket in this Chapter 11 case maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and the transcripts of, and all evidence and arguments made, proffered or adduced at, hearings held before the Court during the pendency of this Chapter 11 case;

4.      Every person or entity required to receive notice of the hearing on confirmation of the Plan received timely and adequate notice thereof. The objection to Plan filed by Union Capital (Dkt. 93) is resolved in the manner as stated on the record;

5.      The Plan has been transmitted to creditors, parties-in-interest, parties requesting notice and equity security holders together with a copy of the Order on Debtor's Motion to Set Deadlines Pursuant to Interim Rule 3017.2 which was approved by the Court on July 7, 2021 (Dkt. #78) (the "Confirmation Deadlines Order");

6.     In accordance with Bankruptcy Rules 2002 and 9014, any materials and notices prescribed by the Confirmation Deadlines Order were served in compliance therewith, and such service was adequate and sufficient. The Court finds that adequate and sufficient notice of the Confirmation Hearing and the other deadlines and matters required to be noticed was given in compliance with the Bankruptcy Rules and the Confirmation Deadlines Order, and no other or further notice is or shall be required.

7.     Compliance with 11 U.S.C. §1123(a). The Court finds and concludes that the Plan: (i) designates classes of Claims and Interests, other than Claims of a kind specified in 11 U.S.C. §507(a)(2), (3) and (8); (ii) specifies classes of Claims and Interests that are not impaired under the Plan; (iii) specifies classes of Claims and Interests that are impaired under the Plan; (iv) provides the same treatment of each Claim or Interest of a particular class, unless the holder of a particular Claim or Interest agrees to less favorable treatment of their respective Claim or Interest; (v) provides for adequate means for implementation of the Plan; and (vi) otherwise complies with Section 1123(a) of the Bankruptcy Code.

8.     Compliance with 11 U.S.C §1123(b). As permitted by 11 U.S.C. §1123(b), the Plan; (i) impairs or leaves unimpaired, classes of Claims and Interests; (ii) subject to Section 365 of the Bankruptcy Code, provides for the assumption, rejection, or assignment of any executory contracts or unexpired leases of the debtor not previously rejected under such section; (iii) provides for the settlement or adjustment of Claims or Interests belonging to Debtor or the Bankruptcy Estate, and for the retention and enforcement of Claims or Interests; (iv) modifies the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leaves unaffected the rights of holders of certain classes of claims; and (v) includes other appropriate provisions that are

not inconsistent with the applicable provisions of the Bankruptcy Code.

9.      The relief provided in the Plan is fair and necessary for the orderly implementation of the Plan and the administration of Debtor's Bankruptcy Estate. Therefore, the Plan satisfies the requirements of 11 U.S.C. §1123(a) and (b).

10.      After notice and a hearing, the requirements for confirmation of the Plan under 11 U.S.C. §1129 have been satisfied.

11.      The Plan complies with the applicable provisions of the Bankruptcy Code as required by 11 U.S.C. §1129(a)(1). Additionally, as required by Bankruptcy Rule 3016(a), the Plan is dated, and the Plan identities Debtor as its proponent.

12.      Compliance with 11 U.S.C. §1129(a)(2). The Court finds and concludes that Debtor has complied with the applicable provisions of the Bankruptcy Code, as required by 11 U.S.C. §1129(a)(2). Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and this Court's orders in transmitting the Plan and all related documents and notices in the solicitation and tabulation of acceptances or rejections of the Plan.

13.      Compliance with 11 U.S.C. §1129(a)(3). The Court finds and concludes that Debtor has proposed the Plan in good faith and not by any means forbidden by law, as required by 11 U.S.C. §1129(a)(3). Debtor has acted and is presently acting in good faith in conjunction with all aspects of the Plan. All provisions and transactions contemplated by the Plan were negotiated and consummated in good faith, at arm's length, and without collusion. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation of the Plan and the solicitation of the Plan. Debtor filed the proposed Plan with legitimate and honest purposes including, distribution of the payments to creditors set forth in the Plan. Additionally, the Plan reflects the best interest of the Debtor's Estate and holders

of Claims and Interests. In addition, the Court finds and concludes that the Debtor solicited acceptance of the Plan in good faith, and in compliance with the Bankruptcy Code. The Debtor and its attorney have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the solicitation of the Plan, and therefore are not and shall not, on account of such issuance or solicitation, be liable at any time for the violations of any law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the distribution or dissemination of any information contained in the Plan, any supplements thereto, and any and all related documents.

14. <u>Compliance with 11 U.S.C. §1129(a)(4)</u>. The Court finds and concludes that all payments made or to be made by the Debtor for services or for costs and expenses incurred in the Debtor's Case, or in connection with the Plan and incident to the Debtor's Case have been approved by, or are subject to approval of, this Court, as required by 11 U.S.C. §1129(a)(4).

15. <u>Compliance with 11 U.S.C. §1129(a)(5)</u>. The Court finds and concludes that (i) the proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and (iii) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

16. <u>Compliance with 11 U.S.C. §1129(a)(6)</u>. The Court finds and concludes that, after confirmation of the Plan, the plan does not purport to alter any rate regulation by any governmental entity, thus satisfying 11 U.S.C. §1129(a)(6).

17.     <u>Compliance with 11 U.S.C. §1129(a)(7)</u>. The Court finds and concludes that with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the plan, or will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date. Therefore, the Plan complies with 11 U.S.C. §1129(a)(7).

18.     <u>Compliance with 11 U.S.C. §1129(a)(8)</u>. The Court finds and concludes that all holders of claims and interests impaired under the Plan have been given adequate opportunity to vote to accept or reject the Plan. The holders of allowed claims in Classes 3, 4a, 4b, and 5 are impaired and have accepted the Plan within the meaning of Section 1126(c) of the Bankruptcy Code. The holders of allowed claims in Classes 2 and 4c are impaired and have not accepted the Plan. The holders of allowed claims in Class 1 are unimpaired within the meaning of Section 1124 of the Bankruptcy Code and are therefore conclusively presumed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code. The holders of Interests in Class 6a are unimpaired and are therefore conclusively presumed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code. The holders of Interests in Class 6b voted to reject the Plan. Because at least one class of impaired claims or interests has not accepted the Plan, it can only be confirmed as a non-consensual plan under 11 U.S.C. §1191(b).

19.     <u>Compliance with 11 U.S.C. §1129(a)(9)</u>. The Court finds and concludes that the treatment of Claims of a kind specified in 11 U.S.C. §507(a)(1)-(8) satisfies the requirements set forth in 11 U.S.C. §1129(a)(9).

20.     <u>Compliance with 11 U.S.C. §1129(a)(10)</u>. The Court finds and concludes that at least one class of claims of the Debtor that is impaired under the Plan has accepted the Plan, as

determined without including the acceptance of the Plan by any insider of the Debtor holding a claim in the class.  The classes of impaired claims that have accepted the Plan are Classes 3, 4a, 4b and 5.  The Court therefore finds that the requirements of 11 U.S.C. §1129(a)(10) have been met with respect to the Debtor's Plan.

21.     <u>Compliance with 11 U.S.C. §1129(a)(11)</u>.  The Court finds and concludes that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan.  Therefore, the requirement of 11 U.S.C. §1129(a)(11) has been met.

22.     <u>Compliance with 11 U.S.C. §1129(a)(12)</u>.  The Court finds and concludes that all fees payable under 28 U.S.C. §1930, as determined by the Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payment of all fees as required by 11 U.S.C. §1129(a)(12).

23.     <u>Inapplicable Provisions of the Bankruptcy Code</u>.  The Court finds and concludes that the provisions of 11 U.S.C. §1129(a)(13)-(15) are inapplicable to the Debtor or the Plan.

24.     <u>Compliance with 11 U.S.C. §1129(a)(16)</u>.  The Court finds and concludes that all transfers of property under the plan are made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust as required by 11 U.S.C. §1129(a)(16). The Court finds and concludes that the Plan has been proposed: (i) for valid business purposes; (ii) to satisfy substantial obligations of Debtor; and (iii) to provide relief to Debtor, Creditors, and parties-in-interest pursuant to the Bankruptcy Code.  The Court further finds and concludes that it is not the principal purpose of the Plan to avoid taxes, or the application of Section 5 of the Securities Act of 1933, 15 U.S.C. §77a *et seq.*

25.     The Plan is fair and equitable to all parties-in-interest, including the Debtor, all unsecured creditors, all secured creditors and all interest holders.  With respect to classes of secured claims, the Court finds that the Plan meets the requirements of §1129(b)(2)(a).  Further, the Court finds that the Plan meets the requirements of §1191(c)(2) and (3) with the modifications provided herein.

Based upon the findings and determinations listed above,

It is **ORDERED, ADJUDGED and DECREED** that Alamo Strategic Manufacturing, Inc.'s Plan of Reorganization Dated June 29, 2021 (Dkt. #73) and annexed hereto as Exhibit "A", is hereby **CONFIRMED** and approved in each and every respect as a non-consensual plan pursuant to Section 1191(b) of the Bankruptcy Code, with the modifications set forth hereinbelow. The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

It is further **ORDERED, ADJUDGED and DECREED** that notwithstanding the terms of the Debtor's Plan, the following provisions shall be deemed to apply in this case:

1.     As provided for in the Plan, the deadline for filing any objections to proofs of claim is no later than thirty (30) days from the Effective Date of the Plan.

2.     All timely filed Proofs of Claim and the claims scheduled as undisputed, non-contingent or liquidated constitute allowed claims under 11 U.S.C. § 502(a) for the purpose of plan distributions.  Notwithstanding the foregoing, the terms of the Plan setting forth the valuation of a particular secured creditor's collateral shall be binding on all such creditors.

3.     As requested by the Subchapter V Trustee, the Debtor has agreed to the inclusion of default provisions with respect to the Plan.  With respect to all holders of allowed claims in this case, the Plan is hereby modified to provide the following default provisions:

Default provisions:  In the event that payments are not made by the Debtor as required by the Plan and Confirmation Order, the holders of allowed claims in this case and other parties-in-interest shall have the right to either: (A) file a motion to

dismiss or convert this case to a case under Chapter 7 of the Bankruptcy Code; or (B) file a motion seeking relief from the automatic stay, in the event the Debtor defaults on a payment to a secured creditor. The payment and default provisions of this Confirmation Order shall supercede any prior orders entered herein with respect to adequate protection and relief from stay motions. The Bankruptcy Court shall retain jurisdiction to determine all matters related to enforcement of the Plan and Confirmation Order.

4.    The Debtor shall be the Disbursing Agent under the Plan. The Trustee shall be compensated at his hourly rate for reviewing the annual reports and communicating with the Debtor regarding Plan modifications.

5.    Debtor's Plan shall pay to the Subchapter V Trustee and Debtor's counsel, all compensation and reimbursement of expenses approved by this Court under 11 U.S.C. §330, in full, prior to substantial consummation as provided under 11 U.S.C. §§ 1101(2) and 1183(c)(2) in this case.

6.    The Class 3 claim of the United States Small Business Association ("SBA") is a long-term secured debt as described by 11 U.S.C. §1192(1). Therefore, a discharge entered in this case shall not result in a discharge of SBA's claim.

7.    In order to ensure compliance with the disposable income requirements of 11 U.S.C. §1191(c), Debtor shall provide reports to the Subchapter V annually, on or before the anniversary date of the entry of this Confirmation Order, setting forth all income and expenses of the Debtor during such reporting period. The Subchapter V Trustee may request future adjustments to the Debtor's Plan payment to account for additional disposable income at that time. The Trustee shall be compensated at his hourly rate for reviewing the annual reports and communicating with the Debtor regarding Plan modifications. In the event there is a dispute concerning any such recommended adjustment, Debtor shall file a motion with this Court to resolve such dispute.

8.    Title to all assets and properties dealt with by the Plan shall not vest in the Reorganized Debtor until a Discharge is entered herein.

9.   The treatment of Class 4c – Unsecured Critical Vendor Claims of SSM is revised and amended in its entirety to read as follows: "The Debtor will pre-pay for all existing and future orders from the Class 4b, SSM Industries ("SSM") until SSM's Allowed Administrative Priority Claim which totals $133,195.97 and SSM's Allowed Pre-Petition Unsecured Claim which totals $193,814.35 is paid in full.

The Debtor will pay SSM no less than $13,000.00 on September 1, 2021.

The Debtor will pay SSM no less than $13,000.00 on October 1, 2021.

The Debtor will pay the greater of the sum of $13,000.00 or 15% of the amount of the total amount any monthly future orders beginning November 1, 2021, this will be the 2021 Premium Payment.

The Debtor will pay SSM $8,000.00 at the first of each month beginning November 1, 2021. That sum will be credited against the 2021 Premium Payment which will be calculated on the 20th of each month, beginning November 20, 2021 and the remaining unpaid balance of the 2021 Premium Payment will be paid on or before November 30, 2021.

The Debtor will pay SSM $8,000.00 at the first of each month beginning December 1, 2021. That sum will be credited against the 2021 Premium Payment which will be calculated on the 20th of each month, beginning November 20, 2021 and the remaining unpaid balance of the 2021 Premium Payment will be paid on or before December 31, 2021.

The Debtor will pay the greater of the sum of $13,000.00 or 25% of the total amount of any monthly future orders beginning January 1, 2022, this will be the 2022 Premium Payment. The Reorganized Debtor will continue to pay SSM $8,000.00 on the first of each month beginning January 1, 2022 and that amount will be credited against the unpaid balance of the 2022 Premium Payment which will be calculated on the 20th of each month beginning January 20, 2022 and paid on or before January 31, 2022.

The total of the 2021 Premium Payments and 2022 Premium Payments together will the payments of $13,000.00 on September 1, 2021 and October 1, 2021 shall be credited against the amount of SSM's Allowed Administrative Claim which totals $133,193.97 [ECF #77] until such amount is paid in full.

Treatment for Class 4c Allowed Pre-Petition Unsecured Claim of SSM Industries

SSM filed timely proof of claim [#9] in the amount of $327,010.32.  After payment of SSM's Allowed Administrative Priority Claim which totals $133,195.97, SSM's Allowed Pre-Petition Unsecured Claim totals $193,814.35 The Debtor will pay $25,000.00 per month beginning on the first of the month following the date SSM's Allowed Administrative Priority Claim is paid in full until the full amount of Allowed Pre-Petition Unsecured Claim is paid in full.

After the Class 4c claim is paid in full, SSM will extend credit to the Debtor for future orders."

10.    Forum Industries, Inc. shall receive the treatment that was ordered in that Agreed Order Resolving Forum Industries Inc.'s Application for Payment of Administrative Claims entered on July 29, 2021 (Dkt. 91).  The terms of that Order are incorporated into the Plan and adopted as part of the Plan.  In the event of default under the Order, which is incorporated in the Plan, Forum Industries, Inc. shall have the same remedies extended to

any other party under the Plan. As part of that Order, Section 10.1(3) of the Plan is removed from the Plan in its entirety.

11.     American Express National Bank shall receive the treatment that was prescribed in that Stipulation Regarding Administrative Claim of American Express filed on July 26, 2021 (Dkt. 90). The terms of that Stipulation are incorporated into the Plan and adopted as part of the Plan. In the event of default of the terms of the Stipulation, which is incorporated in the Plan, American Express National Bank shall have the same remedies extended to any other party under the Plan.

12.     The treatment of the IRS claims in Class 1 are modified to include the following default language as requested by the IRS: "The United States (Internal Revenue Service) has requested the following default language:

(i)     The debt owed by the Debtor to the Internal Revenue Service is a non-dischargeable debt, except as otherwise provided for in the Bankruptcy Code, and that if the Debtor should default, the Internal Revenue Service is not subject to the provisions of the Bankruptcy Code so that the Internal Revenue Service can take whatever actions are necessary to collect said debt in the event of default; the federal tax liens survive the plan confirmation, a bankruptcy discharge, and dismissal of the case. The liens continue to be enforceable against all of the Debtor's property under federal law.

(ii)     A failure by the Reorganized Debtor to make a payment to the Internal Revenue Service pursuant to the terms of the Plan shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the fifteen (15th) day of each month. If there is a default, the Internal Revenue Service must send written demand for payment, and said payment must be received by the Internal Revenue Service within fifteen (15) days of the date of the demand letter. These default provisions pertain to the entire claim(s) of the Internal Revenue Service, secured, unsecured priority, unsecured general, administrative priority and post-confirmation accrued tax. The Debtor is entitled to four (4) notices of default and opportunities to cure; a fifth default may not be cured.

(iii)     The Internal Revenue Service is bound by the provisions of the confirmed Plan and is barred under Section 1141 of the Bankruptcy Code from taking any collection actions against the Reorganized Debtor for pre-petition claims during the duration of the Plan (provided there is no default as to the Internal Revenue Service). The period of limitations on collection remains suspended under 26 U.S.C. Sec. 6503(h) for tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the Internal Revenue Service have been made; or (2) thirty (30) days after the date of the demand letter (described above) for which the Debtor failed to cure the default.

(iv)     The Internal Revenue Service also agrees to withhold collection activity against the trust fund recovery penalty assessment against any responsible officer (if any).  Regarding any liability owing to the IRS which is addressed herein, whether now or later assessed against any responsible party, the IRS will withhold collection of this liability against any party held to be a responsible party as long as the Debtor herein is current on its obligation under the Plan.  This agreement only encompasses the tax periods involved in the confirmed plan.  The forbearance of collection efforts by the Internal Revenue Service does not preclude any action by the Internal Revenue Service to file liens or otherwise to perfect a security interest against the responsible officer as permitted under federal and state law.   The period of limitations on collection will be suspended under 26 U.S.C. 603(h) for the trust fund periods and will terminate on the earlier of (1) all required payments to the Internal Revenue Service have been made under the Plan; or (2) thirty (30) days after the date of the demand letter (described above) for which the Debtor failed to cure the default.

(v)     Internal Revenue Service remedies upon default: Upon any final and non-curable default by the Reorganized Debtor, the Internal Revenue Service may accelerate its allowed pre- and post-petition claims (and any future administrative claims), and declare the outstanding amounts of such claims to be immediately due and owing.  The Internal Revenue Service may pursue any and all available state and federal rights and remedies as provided by law without future order of this Court.

(vi)     Payments must be mailed to:
Internal Revenue Service
300 East 8th Street, M/S 5026 AUS
Austin, TX  78701

(vii)     <u>Agreement with the Internal Revenue Service</u>: The federal tax liens survive the Plan confirmation, a bankruptcy discharge, and dismissal of the case.  The liens continue to be enforceable against the Reorganized Debtor's property to the extent, priority, and validity such liens were entitled to as of the Petition Date and under federal law.  All liens will be timely released upon the completion of the payments to the Internal Revenue Service as set forth and required herein.

(viii)     The Debtor must remain current with respect to all post-petition federal tax liabilities, including the timely filing of tax returns and payment of all tax liabilities as required by applicable law during the term of the Plan.  Failure to remain current with respect to one or more post-petition federal tax liabilities shall constitute an event of default to the Plan; however, the Bankruptcy Court shall have no jurisdiction over any tax issues arising after the date of confirmation.  There will be no automatic stay or post-confirmation injunction with regard to federal tax liabilities accrued after the Petition Date (October 1, 2019), and the IRS shall be free to collect any such liabilities in accordance with the provisions of Title 26 of the United States Code and other applicable laws.

(ix)    To the extent the Debtor has made, or makes in the future, any overpayment of post-petition taxes, post-petition over payments of federal taxes may be setoff against any post-petition federal tax liabilities as allowed by applicable law. If the Debtor has not accrued any post-petition liability to the IRS, the overpayments will be applied to the Debtor's Plan payments under the Plan."

13.    Union Capital's claim shall be treated as secured in the Plan and paid in full, subject to a determination on the claim objection..

It is further **ORDERED, ADJUDGED and DECREED** that the provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are, as of the effective date of the Plan, effective and binding on the Debtor, all creditors of the Debtor, and any other parties-in-interest, as well as their respective heirs, successors, assigns, or other persons claiming through them.

It is further **ORDERED, ADJUDGED and DECREED** that all timely filed Proofs of Claim and the claims scheduled as undisputed, non-contingent or liquidated constitute allowed claims under 11 U.S.C. § 502(a) for the purpose of plan distributions.

It is further **ORDERED, ADJUDGED and DECREED** that the Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

It is further **ORDERED, ADJUDGED and DECREED** that the failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.  Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order and shall have the same binding effect of every other

provision in the Plan, whether or not mentioned in this Confirmation Order. In the event of any inconsistencies between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern.

It is further **ORDERED, ADJUDGED and DECREED** that the provisions governing the assumption and assignment, or rejection, of executory contracts and unexpired leases provided in the Plan under Article 6 are hereby approved. All Allowed Claims arising from the rejection of any of the Debtor's executory contracts and unexpired leases shall be classified as general Unsecured Claims in Class 5 and shall be treated in accordance with the particular provision of the Plan governing such Class.

It is further **ORDERED, ADJUDGED and DECREED** that nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any Litigation Claims referenced in Section 10.1 of the Plan or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the Debtor, in its sole discretion, shall evaluate and determine whether to pursue any retained claims.

It is further **ORDERED, ADJUDGED and DECREED** that, except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by the Disbursing Agent within 30 days following the last day of each month, to the address listed in the creditor's proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known address. The Debtor may also make payments by wire to creditors using the wiring instructions that the parties used prior to the Petition Date.

It is further **ORDERED, ADJUDGED and DECREED** that, as soon as practicable after completion by the Debtor of all payments due under the Plan, with the exception of the payments to the Class 3 creditor, the Debtor may seek the entry of a discharge herein pursuant to 11 U.S.C. §1192.

It is further **ORDERED, ADJUDGED and DECREED** that the Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of Section 1141 of the Bankruptcy Code.

It is further **ORDERED, ADJUDGED and DECREED** that the Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§1127(b) and 1142, and Bankruptcy Rule 3020(d).  Additionally, the Court retains jurisdiction for the purposes stated in Section 8.08 of the Plan.

It is further **ORDERED, ADJUDGED and DECREED** that notwithstanding Section 10.03 of the Plan, all property of the estate shall remain vested in the estate until the Debtor completes all of the payments under the Plan and a discharge is entered herein.  In addition, property of the estate shall include all property identified in 11 U.S.C. §1186.

It is further **ORDERED, ADJUDGED and DECREED** that this Confirmation Order is effective and enforceable immediately upon entry.

# # #

Order Submitted by[2]:

**LANGLEY & BANACK, INCORPORATED**

By:  /s/ *Allen M. DeBard*
Allen M. DeBard
TX Bar No. 24065132
745 E. Mulberry, Suite 700
San Antonio, Texas 78212
Office:  210-736-6600
Facsimile:  210-735-6889
adebard@langleybanack.com
**Counsel for Debtor**

---

[2] By submitting this Order, the attorney submitting said order certifies that the order has been circulated to Eric Terry, Shanna Kaminski, Caroline Small and Mike O'Connor, and each of them approves the form of Order.

# EXHIBIT "A"

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CHAPTER 11 CASE** |
| **ALAMO STRATEGIC** | § | |
| **MANUFACTURING, INC.** | § | **CASE NO. 21-50373-cag** |
| | § | |
| **DEBTOR.** | § | |
| | § | |

---

**ALAMO STRATEGIC MANUFACTURING, INC.'S PLAN OF REORGANIZATION,**
**DATED JUNE 29, 2021**

---

Allen M. DeBard
William R. Davis, Jr.
Langley & Banack, Inc.
745 E. Mulberry, Suite 700
San Antonio, TX 78212
Telephone: (210) 736-6600
Facsimile: (210) 735-6889

*Counsel for the Debtors and Debtors in Possession*

Dated: June 29, 2021

# BACKGROUND FOR CASES FILED UNDER SUBCHAPTER V

### A.    Description and History of the Debtor's Business

The Debtor is a Texas corporation.  Since the end of 2018, the Debtor has been in the business of manufacturing gloves and knee and elbow pads for the Department of Defense ("DOD") pursuant to government contracts.  The Debtor has one contract with the DOD for the production of gloves and a separate contract for the production of knee and elbow pads.  These products are used by American soldiers in training and combat.

The Debtor relies on suppliers, vendors and subcontractors to perform the labor involved in manufacturing the gloves and knee and elbow pads.  Depending on the product line, the Debtor purchases materials that are shipped to a supplier that subsequently produces product using the dyes and mold that the Debtor owns but stores at the vendors' warehouses.  Otherwise, the vendor or supplier will purchase the materials directly and manufacture the product for which the Debtor will purchase.

All of the Debtor's receivables are from the United States government.  Generally, the DOD pays the Debtor within 30 days of receipt of a product shipment.  The Debtor in turn, generally pays its suppliers and vendors within 30 days of the supplier/vendor shipping the finished product.  The Debtor's contracts with the DOD are quantity driven contracts meaning that the DOD requests the quantity of product that it desires to purchase from the Debtor, and the Debtor works to meet those requirements.  To date, the Debtor has maintained the highest rating a government contractor can achieve and has not been late on any shipments.

The current knee and elbow pad is scheduled to end in December 2021 but may extend until March 2022.  The glove contract ends by its own terms in 2023.  When the current knee and elbow pad ends, the Debtor intends to submit a proposal to win the DOD's continual business under a subsequent knee and elbow pad contract.

The Debtor has relied on loans from its inception to fund operations.  Initially, the Debtor entered into a loan with McKinlay Properties, LLC ("McKinlay") to provide the operating cash needed at the Debtor's inception to operate.  The Debtor entered into subsequent loans with McKinlay to provide additional cash.  Ultimately, the repayment terms of the McKinlay loans coupled with the work shutdowns caused by COVID and the freeze throughout Texas during February 2021, proved to be too much for the Debtor to afford, and the Debtor turned to financing arrangements with merchant credit advance parties.  While this cash inflow provided a temporary bandaid for the Debtor's obligations to McKinlay, ultimately, the daily and weekly cash withdrawals by the merchant credit advance parties proved to overburden the Debtor's cash flow and chapter 11 offered the best chance for a reorganization of debt.

### B.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity

interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A**.

**C.** **Ability to make future plan payments and operate without further reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as **Exhibit B**.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $3,217,779.00.

The final Plan payment is expected to be paid on September 2051 (SBA). The final plan payment to general unsecured creditors is expected to be made three years from the effective date.

The Debtor has applied a conservative approach to the revenue numbers included in the attached projections. The Debtor's current knee and elbow pad contract is scheduled to expire in December 2021 but may extend to March 2022. The Debtor plans to submit an application for the award of a new knee and elbow pad with the DOD. In the event the Debtor is not awarded the new knee and elbow pad contract, its revenue and expenses will change as the Debtor's operations will be limited to the glove contract. If the Debtor is awarded the new knee and elbow contract, the Debtor's revenue and expenses should not change drastically from their current numbers. Under either scenario, the Debtor anticipates that the recovery and payments to creditors will not change because the Debtor will have paid all Class 4 Claims in full by the time the current knee and elbow pad contract expires, and only payments to the SBA, IRS and general unsecured creditors will remain. The monthly payments to the SBA are $731.00, the monthly payments to the IRS will be less than $1,000 and payments to Class 5 general unsecured creditors vary based on the Debtor's disposable income. Therefore, the Debtor's expiring contract and ability to win a new contract does not affect payments to creditors or feasibility of this Plan.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections**.

## Article 1: Summary

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code ("Code") proposes to pay creditors of Alamo Strategic Manufacturing, Inc. ("ASM" or "Debtor") from cash flow from operations and/or future income.

This plan provides for:      1 class of priority claims;

2 classes of secured claims;

4 classes of non-priority unsecured claims; and

2 classes of equity security holders.

Non-priority critical unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 100 cents on the dollar. Non-priority general unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 100 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

## Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| **2.01** | **Class 1**: | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). |
| **2.02** | **Class 2:** | The claim of Panthers Capital, to the extent allowed as a secured claim under § 506 of the Code. |
| **2.03** | **Class 3:** | The claim of the United States Small Business Association, to the extent allowed as a secured claim under § 506 of the Code. |
| **2.04** | **Class 4a:** | The non-priority unsecured critical vendor claim of Adjon Leather allowed under § 502 of the Code. |
| **2.05** | **Class 4b:** | The non-priority unsecured critical vendor claim of SSM allowed under § 502 of the Code. |
| **2.06** | **Class 4c:** | The non-priority unsecured critical vendor claim of Minnesota Knitting allowed under § 502 of the Code. |
| **2.07** | **Class 5:** | All other non-priority general unsecured claims allowed under § 502 of the Code. |
| **2.08** | **Class 6a:** | Equity interests of the Debtor held by Rene Sosa. |
| **2.09** | **Class 6b:** | Equity interests of the Debtor held by any other party. |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| **3.01** | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes. |

| 3.02 | **Administrative expense Claims** | Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full over the lift of the plan through equal monthly payments beginning on the first date of the first full month following 30 days after the effective date, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
|------|-----------|-----------|
| 3.03 | **Priority tax claims**: | Each holder of a priority tax claim will be paid in equal monthly installments within five years after the date the order for relief is entered at the 3% statutory interest rate and shall retain any statutory lien on property of the Debtor's estate until such claim is paid in full. |
| 3.04 | **Statutory fees**: | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.05 | **Prospective quarterly fees**: | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. |

## Article 4: Treatment of Claims and Interests Under the Plan

**4.01 Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 1 – **Priority claims** excluding those in Article 3 | Unimpaired | The Class 1 claims consist of the claims of the Internal Revenue Service. The allowed claims of the IRS will be paid through equal monthly payments with interest at the rate of 3%. The allowed claims of the IRS will be paid in full through monthly payments within 5 years of the petition date in accordance with 11 U.S.C. 507(a)(8).

The Debtor has not filed its 2020 tax return and has received an extension. The Debtor anticipates having a loss for 2020 and will work with the IRS to |

accurately liquidate the IRS's claim and pay any outstanding liability.

| | | |
|---|---|---|
| Class 2 – **Secured Claim** of Panthers Capital | Impaired | Panthers Capital shall have an allowed secured claim in the amount of $5,000.00 which shall be paid in one monthly payment of $5,000 made on the 30th day after the effective date.<br><br>Upon payment of Panthers Capital in the total amount of $5,000.00, the Debtor and all personal guarantors of the debt shall be released of any liability to Panthers Capital. |
| Class 3 – **Secured Claim** of United States Small Business Association | Impaired | The SBA shall have an allowed secured claim in the amount of $154,438.36 which shall be paid in equal monthly installments of $731.00 at 3.75% interest commencing thirty (30) days after the effective date of the Plan over 30 years. The Debtor reserves the right to pay the allowed secured claim of the SBA sooner than 30 years without penalty.<br><br>All prepetition liens of the SBA shall remain in full force and effect postpetition until the indebtedness is paid in full. |
| Class 4a – **Unsecured Critical Vendor Claims** of Adjon Leather | Impaired | The Class 4a claims shall include the allowed unsecured claims of critical vendor Adjon Leather.<br><br>Adjon Leather is a "critical vendor" pursuant to the Order entered at Dkt. 23 in this case. Adjon Leather has continued to supply goods, materials and services to the Debtor during the pendency of this case and more importantly, will continue to provide goods, materials and services to the Debtor following the confirmation of the Plan on the same terms and credit limits that Adjon Leather provide prior |

to the petition date. Adjon Leather and its commitment to continue doing business with the Debtor is imperative to the continued operations of the Debtor and viability of the Plan.

As of the filing of the Plan, Adjon Leather has an outstanding claim in the amount of $134,632.91. The Debtor will make monthly payments to Adjon Leather in the amount of $10,000.00 beginning on August 1, 2021 and continuing on the first day of each month thereafter until the claim is paid in full. The Debtor estimates Class 4a claims will be paid in full by September 2022. All invoices for goods, materials and services provided by Adjon Leather to the Debtor following the petition date and confirmation of this plan will be paid in the ordinary course of the parties' business.

| | | |
|---|---|---|
| Class 4b – **Unsecured Critical Vendor Claims** of Minnesota Knitting | Impaired | The Class 4b claims shall include the allowed unsecured claims of critical vendor Minnesota Knitting. |

Minnesota Knitting is a "critical vendor" pursuant to the Order entered at Dkt. 23 in this case. Minnesota Knitting has continued to supply goods, materials and services to the Debtor during the pendency of this case and more importantly, will continue to provide goods, materials and services to the Debtor following the confirmation of the Plan on the same terms and credit limits that Minnesota Knitting provided prior to the filing and its commitment to continue doing business with the Debtor is imperative to the continued operations of the Debtor and viability of the Plan.

As of the filing of the Plan, Minnesota Knitting has an outstanding claim in

the amount of $127,053.00. The Debtor will make monthly payments to Minnesota Knitting in the amount of $31,763.25 beginning on July 1, 2021 and continuing on the first day of each month thereafter until the claim is paid in full. All invoices for goods, materials and services provided by Minnesota Knitting to the Debtor following the petition date and confirmation of this plan will be paid in the ordinary course of the parties' business.

| Class 4c – **Unsecured Critical Vendor Claims** of SSM | Impaired | The Class 4c claims shall include the allowed unsecured claims of critical vendor SSM. |

SSM is a "critical vendor" pursuant to the Order entered at Dkt. 23 in this case. SSM has continued to supply goods, materials and services to the Debtor during the pendency of this case and more importantly, will continue to provide goods, materials and services to the Debtor following the confirmation of the Plan on the same terms and credit limits that SSM provided prior to the filing and its commitment to continue doing business with the Debtor is imperative to the continued operations of the Debtor and viability of the Plan.

As of the filing of the Plan, SSM has an outstanding claim in the amount of $323,010.00 which includes its allowed administrative expense claim in the amount of $133,195.97. The Debtor will make monthly payments to payments to SSM in the amount of $25,000.00 beginning on August 1, 2021 until the claim is paid in full. All invoices for goods, materials and services provided by SSM to the Debtor following the petition date and confirmation of this plan will be paid

|  |  |  |
|---|---|---|
|  |  | in the ordinary course of the parties' business. |
| Class 5 – Non-priority General **Unsecured Claims** | Impaired | The Class 5 claims shall include the allowed unsecured claims that are not included in Class 4(a)-(c). |
|  |  | Class 5 claimants shall receive their pro rata share of the Debtor's monthly disposable income for three years following the effective date. The first distribution to Class 5 creditors will be made by the 15th day of the month following the effective date. For example, if an order confirming the plan is entered on August 12, 2021, the first payment to Class 5 creditors will be made on or before October 15, 2021. Payments to holders of allowed Class 5 claims will be made to the address listed on the corresponding proof of claim filed in this case, or in the event no proof of claim was filed, the address listed in the Debtor's schedules. |
|  |  | The Debtor shall act as the disbursing agent for all payments made to holders of allowed Class 5 Claims. |
| Class 6a – Rene Sosa's **Equity security Interests in the Debtor** | Unimpaired | Rene Sosa shall retain his interest in the Debtor. |
| Class 6b – Other **Equity security holders of the Debtor** | Unimpaired | All other existing or potential equity interests shall be extinguished including those asserted by McKinlay Properties, LLC. The Debtor disputes that any other equity interests are valid or existing. |

## Article 5: Allowance and Disallowance of Claims

|      |                |                                                                                                                                                                                                                                                       |
|------|----------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 5.01 | **Disputed Claim** | A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: |

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

|      |                |                                                                                                                                                                                                                                                       |
|------|----------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.03 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

|      |                |                                                                                                                                                                                                                                                       |
|------|----------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 6.01 | **Assumed executory contracts and unexpired leases** | (a)   the Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date: |

AT&T Wireless – Mobile Business Agreement; Cure Amount -$0
BlueCross BlueShield – Medical Coverage; Cure Amount -$0
DLA Troop Support – Knee and Elbow Pad Contract, Cure Amount -$0
DLA Troop Support – Glove Manufacturing Contract, Cure Amount -$0
Intuit Quickbooks – License Agreement, Cure Amount -$0
Nationwide Insurance – Auto Insurance, Cure Amount -$0
Regus Management Group, LLC – Office Lease, Cure Amount -$0
United Health Care – Vision Insurance Plan, Cure Amount -$0

(b)   Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

This Plan is based upon the distributions to creditor by the Debtor, at its option, by means of one or more of the following: (a) cash presently held by the Debtor and cash to be acquired through the operation of its business including cash generated from the contracts the Debtor is currently under and those contracts that the Debtor may win at a later date; and (b) collection of accounts receivable. Rene Sosa shall be the disbursing agent for all distributions and plan payments.

Mr. Rene Sosa shall continue to operate the Debtor's business as its CEO and sole shareholder. Mr. Sosa's rate of compensation for the year 2021 shall remain at $180,000.00.

Post-confirmation, the Debtor shall retain all of its assets and shall be authorized, if necessary, to sell all or part of its assets so long as all of the allowed claims of secured creditors under the Plan are paid in full or continue to be paid as provided for in the Plan. The lien claims of creditors will automatically attach to any sales proceeds in accordance with their existing lien position. No secured creditor is required to release their liens against the Debtor's real or personal property unless such allowed claim has been paid in full per the terms of this Plan.

Property or funds remaining in the estate of the Debtor after all classes of claims have been paid pursuant to the Plan shall remain and be retained as the property of the Debtor.

## Article 8: General Provisions

**8.01 Definitions and rules of construction**

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

**"Avoidance Action"** means a Cause of Action owned or available to be brought by the Debtor or its successors pursuant to sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code and the corresponding state law equivalent.

**"Causes of Action"** means any claims, including the Identified Causes of Action, interests, Equity Interests, damages, remedies, causes of action, controversy, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, judgment, privileges, licenses, liens, indemnities, guaranties, and franchises of a Debtor or its Estate of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable,

directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or pursuant to any other theory of law. Causes of Action also include: (a) all rights of setoff, counterclaim, cross claim, reduction, subordination, or recoupment and claims under contracts or for breaches of duties imposed by law or regulation of a Debtor or its Estate; (b) the right of a Debtor or its Estate to object to or otherwise contest Claims or Equity Interests; (c) claims of a Debtor or its Estate pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) such claims and defenses of a Debtor or its Estate as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim of a Debtor or its Estate.

"**Disbursing Agent**" shall mean Rene Sosa.

"**Identified Causes of Action**" means the causes of action, including Avoidance Actions, identified in Article 10 of the Plan.

"**Reorganized Debtor**" means the Debtor, from and after the Effective Date.

**8.02 Effective Date**    The effective date of this Plan is the first business day following the date that is 30 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

**8.03 Severability**    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.04 Binding effect**    The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**8.05 Captions**    The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.06 Controlling effect**    Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in

connection with this Plan, except as otherwise provided in this Plan.

| | | |
|---|---|---|
| **8.07** | **Corporate Governance** | The Debtor shall amend its charter to contain a provision prohibiting the issuance of non-voting equity securities and shall maintain a single class of voting equity securities. |

## 8.08 Retention of Jurisdiction

Prior to the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters over which it may exercise jurisdiction pursuant to 28 U.S.C. §1334.

On and after the Effective Date, the Bankruptcy Court will retain and have jurisdiction, to the fullest extent permissible under law, over all matters arising in, arising under, or related to the Debtors' Reorganization Cases, or that relate to any of the following:

(a)     To hear and determine all matters with respect to the assumption or rejection of executory contracts, resolution of disputes pertaining to Cure Payment amounts and the allowance of the Claims resulting therefrom.

(b)     To hear and determine any application to modify this Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

(c)     To hear and determine any application under Sections 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred by professionals prior to the Effective Date, provided, however, that from and after the Effective Date, the payment of fees and expenses incurred from and after the Effective Date of the retained professionals of the Reorganized Debtor shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

(d)     To hear and determine any dispute or reconcile any inconsistency arising in connection with this Plan, any of the Plan Documents or the Confirmation Order or the interpretation, implementation or enforcement of this Plan, any of the Plan Documents, the Confirmation Order, any transaction or payment contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing.

(e)     To hear and determine any matter concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code.

(f)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and Title 28 of the United States Code.

(g)      To hear and determine any rights, claims or causes of action held by or accruing to the Debtors or the Reorganized Debtor pursuant to the Bankruptcy Code.

(h)      To hear and determine any dispute arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation and similar claims pursuant to Section 105(a) of the Bankruptcy Code.

(i)      To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court.

(j)      To take any action, and issue such orders as may be necessary or appropriate, to construe, enforce, implement, execute and consummate this Plan or to maintain the integrity of this Plan following consummation.

(k)      To take any action to ensure that all distributions are accomplished as provided herein.

(l)      To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, Administrative Expense Claim or Equity Interest.

(m)      To enter, implement or enforce such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated.

(n)      To take any action to recover all assets of the Debtor and property of the Debtor's estate wherever located.

(o)      To enter a final decree closing the Debtor's Reorganization Cases.

(p)      To hear and determine any motion, adversary proceeding, application, contested matter and other litigated matter pending on or commenced after the Confirmation Date, including insurance-related disputes as set forth in Section 11.3.

(q)      To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Debtors' Reorganization Cases with respect to any Person.

(r)      To hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge.

(s)      To hear and determine any other matter that may arise in connection with or is related to this Plan, the Confirmation Order, any of the Plan Documents or any other contract, instrument, release or other agreement or document related to this Plan.

(t)      To hear and determine the Causes of Action retained by the Reorganized Debtor pursuant to Article 10 hereof, without limiting the jurisdiction of any other court of competent jurisdiction, if the Reorganized Debtor so elects.

## Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10: Other Provisions

### 10.1 Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain (or shall receive from the Debtor) and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than: the Causes of Action released by the Debtor pursuant to the releases and exculpations contained in the Plan, which shall be deemed released and waived by the Debtor and the Reorganized Debtor as of the Effective Date. **No Entity may rely on the absence of a specific reference in the Plan to any Cause of Action against it as any indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against it. The Debtor and the Reorganized Debtor expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in, or according to the terms of, the Plan, or a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

The Reorganized Debtor reserves (or receives) and shall retain the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtor. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

The Debtor hereby preserves the following claims and causes of action

1.      Claims against McKinlay Properties, LLC for all causes of action, known or unknown, including but not limited to claims for contract or tort damages, usury, failure to adequately capitalize, declaratory judgment actions related to the pre-petition loan agreements entered into with the Debtor and to the existence and validity of any equity interest in the Debtor McKinlay Properties, LLC asserts it owns or controls, and all other claims including chapter 5 of title 11, United States Code, whether known or unknown, including claims for fraudulent conveyances under Texas law, and all other claims either known or unknown.  The Debtor further preserves all claims and causes of actions against individuals including Steve McKinlay and all other known or unknown individuals who may have received cash and/or transfers of other property from McKinlay Properties, LLC as fraudulent transfers.

The Debtor also retains all rights to object to claims of McKinlay Properties, LLC, and all rights of offset, recoupment, including any right to bring an action previously barred by any statute of limitations, to the extent such right exists in connection with any response to any action brought against the estate, including the objection to any proof of claim or proof of interest filed by McKinlay Properties, LLC.  The amounts that may be recovered in such actions has not been estimated at this time.

2.      Claims against all prepetition creditors of the Debtor and or parties in interest or any one of them which arise under chapter 5 of title 11, United States Code or State law, including preference actions and fraudulent conveyance claims, including fraudulent conveyance claims at Texas state law.

        a.      The Debtor does not intend to assert any claim of preference or fraudulent conveyance under state or federal law upon any claim of less than $5,000.

        b.      The Debtor does not intend to file any claim of preference against any taxing authority for such are barred by statute.

        c.      The Debtor does not intend to file any claim for preference where the payments were made in the ordinary course or are otherwise protected by the defenses to preference claims found at 11 U.S.C.§ 547 (c).

        d.      A complete list of pre-petition payments made within 90 days of the date of the Petition can be found at the Debtor's Statements of Financial Affairs,

Question No. 3.  This material is available online through PACER or by written request to Debtor's counsel, Allen M. DeBard, which contact information appears at the end of the Plan.  The amounts that might be recovered in such actions has not been estimated at this time.

3.      Claims against Forum Industries for all causes of action, known or unknown, including but not limited to claims for contract or tort damages, recovery of payment under 11 U.S.C. § 549, breach of contract, tortious interference with contract, and all other claims including chapter 5 of title 11, United States Code, whether known or unknown, including claims for fraudulent conveyances under Texas law, and all other claims either known or unknown.

The Debtor also retains all rights to object to claims of Forum Industries, and all rights of offset, recoupment, including any right to bring an action previously barred by any statute of limitations, to the extent such right exists in connection with any response to any action brought against the estate, including the objection to any proof of claim filed by Forum Industries.  The amounts that may be recovered in such actions has not been estimated at this time.

4.      The Debtors reserve all causes of action against Panthers Capital, Blade Funding, Inc., Green Capital Funding, LLC, Diesel Funding, LLC, Fundamental Capital, Union Capital UT LLC dba Union Funding UT, NewCo, Capital Group, Apex Funding, and Smart Funding for breach of contract, usury, fraud, unjust enrichment concerning the future receivable purchase agreement between them and the Debtor.

5.      The Debtor reserves all rights it may have under the various policies of insurance procured by the Debtor pre- or post-petition from any insurance companies.

## 10.2 Claims Objection Bar Date

The Debtor prior to the Effective Date, and thereafter the Reorganized Debtor, shall have the authority to file objections on or before the thirtieth day following the effective date, and shall have the exclusive authority to settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether classified or otherwise.  From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

The date by which the Debtor and/or Reorganized Debtor must file objections to claims may be extended by the Bankruptcy Court from time to time on request of the Debtor and/or Reorganized Debtors.

## 10.3 Administrative Claim Bar Date

All parties seeking allowance of an administrative claim, including estate professionals and parties seeking allowance of a claim for substantial contribution, but excluding all claims brought under 11 U.S.C. § 503(b)(9), must assert such claim on or before the thirtieth (30th) day

following the effective date. Parties seeking allowance of claims under § 503(b)(9) shall comply with the deadlines and rules for filing such claims.

Dated: June 29, 2021

Respectfully submitted,

ALAMO STRATEGIC MANUFACTURING, INC.
Debtor and Debtor in Possession

By: */s/ Rene Sosa*_____
Name: Rene Sosa_____
Title: CEO_____

COUNSEL:

Langley & Banack, Inc.
745 E. Mulberry, Suite 700
San Antonio, TX 78212
Telephone: (210) 736-6600
Facsimile: (210) 735-6889

As to legal matters contained within this Plan:

*/s/ Allen M. DeBard*_____
Allen M. DeBard, Counsel for the Debtor and
Debtor-in-Possession

Alamo Strategic Manufacturing, Inc.
Exhibit "A"

### LIQUIDATION ANALYSIS

| Real Property | Scheduled | Liquidation Value | Lien | Equity |
|---|---|---|---|---|
| None | | | | |

| Personal Property | Scheduled | Liquidation Value | Lien | Equity |
|---|---|---|---|---|
| Cash on hand[1] | $31,095.29 | $31,095.29 | $154,483.36 | 0.00 |
| A/R | $406,207.00 | $406,207.00 | $154,483.36 | $406,207.00 |
| Causes of Action | unknown | unknown | $154,483.36 | unknown |
| Raw Materials | $321,000.00 | $0.00 | $154,483.36 | 0.00 |
| Office Equipment | $6,200 | 0 | $154,483.36 | 0.00 |
| Audi Q7 | $33,000 | $16,500 | $154,483.36 | 0.00 |
| Glove Dyes and Molds | $0 | $0 | $154,483.36 | 0.00 |
| Insurance Policies | $0 | $0 | -- | 0.00 |
| Domain name | $0 | $0 | -- | 0.00 |
| Office Lease | $0 | $0 | -- | 0.00 |

| | |
|---|---|
| Funds Available For Claims | $453,802.29 |
| Estimated Administrative Claims from Chapter 11 case (net of retainer) | |
|     Debtor Counsel Fees | $15,000.00 |
|     Subchapter V Trustee Fees | $10,000.00 |
|     SSM | $133,195.97 |
|     Forum Industries, Inc. | $250,008.00 |
|     Outstanding Payables Entitled to Admin. Claim | $399,000.00 |
| Secured Claims | $154,483.36 |
| Funds Available for Priority and General Unsecured Claims | $0.00 |

[1] As of 6/18/21

L & B 24906/0002/L1969334.DOCX/

## Alamo Strategic Manufacturing, Inc.
### Aug - Dec '21 Budget

| Payee/Vendor Name | Purpose | August | September | October | November | December |
|---|---|---|---|---|---|---|
| Knee and Elbow Pads (KEPS) | | 464,000 | 464,000 | 464,000 | 464,000 | 464,000 |
| Intermediate Cold Weather Glove (ICWG) | | 1,231,876 | 1,026,310 | 990,990 | 762,300 | 635,250 |
| **Total Revenue** | | **1,695,876** | **1,490,310** | **1,454,990** | **1,226,300** | **1,099,250** |
| | | | | | | |
| **Cost of Goods** | | | | | | |
| **Labor** | | | | | | |
| Pentaq Manufacturing | Cut, Sew, & Package KEPS | 304,000 | 304,000 | 304,000 | 304,000 | 304,000 |
| Lowell Sewing | Cut, Sew, & Package Gloves | 407,232 | 327,600 | 327,600 | 210,000 | 140,000 |
| MG Cutting | Cutting Services | 60,503 | 50,406 | 48,672 | 37,440 | 31,200 |
| Bluewater Defense | Cut, Sew, & Package Gloves | - | - | - | - | - |
| Subtotal Labor | | 771,735 | 682,006 | 680,272 | 551,440 | 475,200 |
| | | | | | | |
| **Raw Materials** | | | | | | |
| Maxwell Manufacturing | Caps for Pads | 63,360 | 63,360 | 63,360 | 63,360 | 63,360 |
| Adjon Leather | Leather for Gloves | 218,000 | 130,900 | 130,900 | 130,900 | 59,500 |
| SSM | Nomex for Gloves | 260,000 | 260,000 | 260,000 | 195,000 | 195,000 |
| International Foam | Lining for Gloves | 49,021 | 71,340 | 71,340 | 49,021 | 49,021 |
| Minnesota Knitting | Nomex Cuffs for Gloves | 68,750 | 55,000 | 55,000 | 68,400 | 27,500 |
| Northeast Knitting | Elastic for Gloves | - | 7,720 | - | 7,720 | - |
| Coats | Kevlar Thread for Gloves | 5,671 | 24,363 | 5,671 | 5,671 | 24,363 |
| A&E | Nylon Thread for Gloves | - | 4,670 | - | 4,670 | - |
| Golden Sales | Sewn-in Labels for Gloves | - | - | - | - | - |
| Subtotal Raw Materials TTL | | 664,802 | 617,353 | 586,271 | 524,742 | 418,744 |
| | | | | | | |
| **Human Resources** | | | | | | |
| Payroll | | 39,819 | 26,600 | 26,600 | 26,600 | 26,600 |
| Taxes | | 14,913 | 9,944 | 9,944 | 9,944 | 9,944 |
| Benefits | | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 |
| Subtotal Human Resources | | 58,932 | 40,744 | 40,744 | 40,744 | 40,744 |
| | | | | | | |
| **Office** | | | | | | |
| Office Lease | | 2,853 | 2,853 | 2,853 | 2,853 | 2,853 |
| Phones | | 250 | 250 | 250 | 250 | 250 |
| Quickbooks | | 174 | 174 | 174 | 174 | 174 |
| UPS & Postage | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Office Supplies | | 100 | 100 | 100 | 100 | 100 |
| Internet | | 150 | 150 | 150 | 150 | 150 |
| Subtotal Office | | 4,527 | 4,527 | 4,527 | 4,527 | 4,527 |
| | | | | | | |
| **CAP Ex & Services** | | | | | | |
| Dies | | 500 | 500 | 500 | 500 | 500 |
| Freight | | 36,956 | 30,789 | 27,729 | 22,869 | 19,057 |
| CPA | | - | - | - | - | - |
| Attorney | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Wire Fees | | 100 | 100 | 100 | 100 | 100 |
| Trustee | | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Subtotal Services | | 44,556 | 38,389 | 35,329 | 30,469 | 26,657 |
| | | | | | | |
| **Plan Payments** | | | | | | |
| IRS | | 826 | 826 | 826 | 826 | 826 |
| SBA | | 731 | 731 | 731 | 731 | 731 |
| Adjon Leather | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| SSM | | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Minnesota Knitting | | 31,763 | 31,763 | 31,763 | - | - |
| Panther | | 5,000 | - | - | - | - |
| Subtotal Plan Payments | | 73,320 | 68,320 | 68,320 | 36,557 | 36,557 |
| | | | | | | |
| **Total Expenses** | | **1,617,872** | **1,451,339** | **1,415,463** | **1,188,479** | **1,002,429** |
| | | | | | | |
| **Profit/Loss (Disposable Income)** | | **78,004** | **38,971** | **39,527** | **37,821** | **96,821** |

# Alamo Strategic Manufacturing, Inc.

**Profit and Loss (P&L) Statement - FORECASTED**



| | 2022 | 2023 | 2024 |
|---|---|---|---|
| Knee Pads | 3,569,700 | 3,641,094 | 3,713,916 |
| Elbow Pads | 2,781,300 | 2,836,926 | 2,893,665 |
| Cold Weather Flyer's Glove | 5,082,000 | 5,183,640 | 5,287,313 |
| Heavy Duty Glove | 893,750 | 1,787,500 | 1,823,250 |
| Returns, Refunds, Discounts | - | - | - |
| **Total Net Revenue** | **12,326,750** | **13,449,160** | **13,718,143** |
| | | | |
| Cost of Goods Sold | 10,145,295 | 11,456,442 | 10,974,515 |
| **Gross Profit** | **2,181,455** | **1,992,718** | **2,743,629** |
| | | | |
| **Expenses** | | | |
| Human Resources | 468,930 | 478,309 | 487,875 |
| Office Expenses (incl. Rent) | 39,512 | 39,512 | 39,512 |
| Marketing | 1,500 | 1,500 | 1,500 |
| Travel & Entertainment | 35,000 | 35,000 | 35,000 |
| Capital Expenditures (incl. Tooling) | 25,000 | 15,000 | 15,000 |
| Services (Wires, CPA, Etc.) | 20,000 | 20,000 | 20,000 |
| Freight | 39,000 | 40,000 | 40,000 |
| Plan Payments | 438,684 | 438,684 | 438,684 |
| Total Expenses | 1,067,626 | 1,068,005 | 1,077,571 |
| | | | |
| **Earnings Before Interest & Taxes** | **1,113,829** | **924,713** | **1,666,058** |
| | | | |
| Income Taxes | 233,904 | 194,190 | 349,872 |
| **Disposable Income** | **879,925** | **730,524** | **1,316,186** |

Label Matrix for local noticing
0542-5
Case 21-50373-cag
Western District of Texas
San Antonio
Mon Jun  7 12:27:29 CDT 2021

Alamo Strategic Manufacturing, Inc.
700 N St Mary's St, Suite 1400
San Antonio, TX 78205-3535

U.S. BANKRUPTCY COURT
615 E. HOUSTON STREET, ROOM 597
SAN ANTONIO, TX 78205-2055

Adjon
233 Kingsboro
GLOVERSVILLE, NY 12078-1428

Albany Pallet
4800 Solvay Road
Jamesville, NY 13078-9530

Allen Cutting
41 Canal St.
Lewiston, ME 04240-7764

American Express
P.O. Box 981535
El Paso, TX 79998-1535

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

Anna Rubin
The Rubin Law Firm, PLLC
881 Baxter Drive
South Jordan, UT 84095-8506

Att Wireless
208 S. Akard St.
Dallas, TX 75202-4206

Blade Funding Inc.
211 Boulevard of the Americas
Lakewood, NJ 08701-4775

BlueCross BlueShield
225 North Michigan Ave.
Chicago, IL 60601-6026

Coats
14120 Ballantyne Corporation Pl
Suite 300
Charlotte, NC 28277-3169

DCMA Dallas
4211 Cedar Springs Road
Dallas, TX 75219-2602

DLA Troop Support
C and T Supply Chain
700 Robbins Avenue
Philadelphia, PA 19111-5008

Diamex
8770 Pascal-Gagnon
Saint-Leonard, QC H1P, 1Z3

Dieco
2633 Boul. Le Corbusier
Laval, QC H75-2E8

Diesel Funding LLC
1100 NE 163rd - Ste. 404
Miami, FL 33162-4527

Forum
1400 Currency Dr.
San Antonio, TX 78219-2610

Forum Industries, Inc.
c/o Caroline Newman Small
719 S. Flores Street
San Antonio, Texas 78204-1350

Golden Sales
225 S. Chester Rd, Suite 3
Swarthmore, PA 19081-1919

Green Capital Funding, LLC
116 Nassau Street - Ste. 804
New York, NY 10038-2481

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

International Foam
10503 Westlake Dr.
Charlotte, NC 28273

Intuit Quickbooks
2632 Marine Way
Mountain View, CA 94043-1126

John C. Tucker
2921 Suffolk Dr. Ste 500
Fort Worth, TX 76133-1100

Lowell
35 Tanner St
Lowell, MA 01852-4419

MG Cutting
8 Industrial Parkway
Johnstown, NY 12095-1045

Maxwell
52 2nd St.
Maxwell, TX 78656

McKinlay Properties, LLC
8714 Poppy Hills
Boerne, TX 78015-4883

(p)MINNESOTA KNITTING MILLS  INC
1450 MENDOTA HEIGHTS ROAD
ST PAUL MN 55120-1097

(p)NATIONWIDE INSURANCE
SERVICE OF PROCESS TEAM
THREE NATIONWIDE PLAZA
MAIL CODE 3-11-310
COLUMBUS OH 43215-2410

NewCo, Capital Group LLC
90 Broad Street - Ste. 903
New York, NY 10004-2230


Newtek Small Business Finance
1981 Marcus Avenue - Ste. 130
New Hyde Park, NY 11042-1046

North East
PO Box 5808
Pawtucket, RI 02862-5808

North East Knitting, Inc
179 Conant St.
Pawtucket, R.I. 02860-7204


PANTHERS CAPITAL
80 Broad Street Suite 3303
80 Broad Street Suite 3303
New York, NY 10004-2209

Panthers Capital
1022 Avenue M.
Brooklyn, NY 11230-4747

Pentaq
PO Box 1137
Sabana Grande, PR 00637-1137


Regus Management Group, LLC
15455 Dallas Pkwy, Ste. 600
Addison, TX 75001-6760

SSM
211 Ellis St
Spring City, TN 37381-5223

SSM Industries
Michael J. O'Connor
Law Office of Michael J. O'Connor
921 Proton Road
San Antonio, TX 78258-4203


SSM Industries
c/o James A. Fields
130 Jordan Drive
Chattanooga, TN 37421-6748

Shanna M. Kaminski
KAMINSKI LAW, PLLC
P.O. Box 725220
Berkley, Michigan 48072-5220

Spark Funding, LLC
d/b/a Fundamental Capital
100 Garden City Plaza, #410
Garden City, NY 11530-3216


Steven B. Bass
U.S. Attorney's Office
903 San Jacinto Blvd., Ste. 334
Austin, TX 78701-2449

Transdel
PO Box 1505
San Marcos, TX 78667-1505

Truck It
394 County Rd 102
Gloversville, NY 12078-7065


U.S. Small Business Administration
Disaster Assistances
Processing and Disbursement Center
14925 Kingsport Road
Fort Worth, TX 76155-2243

UPS
55 Glenlake Parkway NE
Atlanta, GA 30328-3474

US Attorney General
Main Justice Bldg., #511
10th & Constitutional Ave., NW
Washington, DC 20530-0001


Uline
12575 Uline Drive
Pleasant Prairie, WI 53158-3686

Union Funding Source
Union Capital UT LLC
dba Union Funding UT
881 Baxter Drive
South Jordan, UT 84095-8506

United Health Care
P.O. Box 1459
Minneapolis, MN 55440-1459


United States Attorney
Taxpayer Division
601 N.W. Loop 410 - Ste. 600
San Antonio, TX 78216-5512

United States Small Business Administration
615 E Houston St., Ste 298
SAN ANTONIO, TX 78205-2046

United States Trustee - SA12
US Trustee's Office
615 E Houston, Suite 533
PO Box 1539
San Antonio, TX 78295-1539


Utica
901 Broad St. Ste 1
Utica, NY 13501-1500

Worldwide Express
2323 Victory Ave. Suite 1600
Dallas, TX 75219-7696

Worldwide Express
Two Easton Oval - #535
Columbus, OH 43219-6036

Allen M. DeBard
Langley & Banack, Inc.
745 E Mulberry Ave, Suite 700
San Antonio, TX 78212-3172

Eric Terry
Eric Terry Law, PLLC
3511 Broadway
San Antonio, TX 78209-6513

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Minnesota
1450 Mendota Heights Rd.
Saint Paul, MN 55120

Nationwide Insurance
1 Nationwide Plaza
Columbus, OH 43215

End of Label Matrix
Mailable recipients    61
Bypassed recipients     0
Total                  61