## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: § | | |
| **Alamo Strategic Manufacturing, Inc.** § | Case No.: 21-50373-G | |
| Debtor § | | |
| § | Chapter 11 Proceeding | |
| § | | |
| **McKinlay Properties, LLC** § | | |
| Plaintiff § | Adversary No.:_____ | |
| § | | |
| v. § | | |
| § | | |
| **Alamo Strategic Manufacturing, Inc.** § | | |
| Defendant § | | |

## COMPLAINT FOR REVOCATION OF CONFIRMATION ORDER

TO THE HONORABLE CRAIG GARGOTTA, CHIEF UNITED STATES BANKRUPTCY JUDGE:

McKinlay Properties, LLC ("**Plaintiff**"), a party in interest in the above-captioned bankruptcy case and as plaintiff in the above-captioned adversary proceeding, hereby alleges, upon its own knowledge or upon information and belief, as follows:

### PRELIMINARY STATEMENT

1. This is an adversary proceeding by Plaintiff, pursuant to 11 U.S.C. § 1144, for revocation of the order confirming the plan of reorganization of the Alamo Strategic Manufacturing, Inc. ("**Defendant**") because confirmation Defendant's Chapter 11 Small Business Subchapter V Plan (the "**Plan**") was procured by the fraudulent acts of the Defendant.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and Plaintiff consents to entry of a final order or judgment by the Bankruptcy Court in this matter.

3. This is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A) and (L).

4. Venue is proper in this district under 28 U.S.C. § 1409(a).

5. This adversary proceeding is commenced pursuant to Bankruptcy Rule 7001(5) and section 1144 of the Bankruptcy Code (the "**Code**").

## PARTIES

6. Plaintiff is a party in interest in the above-captioned case, having a principal place of business at 8714 Poppy Hills, Boerne, TX 78012

7. Defendant is the debtor-in-possession, having a principal place of business at 700 N. Saint Mary's Ste. 1400, San Antonio, TX 78205.

## BRIEF STATEMENT OF CLAIMS

8. Plaintiff claims that Defendant committed fraud in the procurement of confirmation of its Chapter 11 Subchapter V Plan by:

(a) failing to disclose transfers from Defendant to Plaintiff in the Defendant's Statement of Financial Affairs (the "**SOFA**") which transfers were (i) required be disclosed in response to at least three different items set forth in the SOFA, (ii) are now alleged to be fraudulent transfers by Defendant, and (iii) benefited Mr. Rene Sosa, an insider of Defendant;

(b) failing to disclose in its petition, statement and schedules the issuance and transfer by Defendant of 5,100,000 shares of Defendant's Class B Convertible Stock (the "**Shares**") to a trust (the "**Trust**") as settlor of the Trust for the benefit of Plaintiff,

(c) misrepresenting the equity ownership of Defendant in its petition, statement and schedules as being held 100% by Mr. Rene Sosa, when in fact at all times pre-petition relevant to this matter, Mr. Sosa held 51% of the Defendant's shares as Trustee of the Trust,

(d) misrepresenting and mischaracterizing the nature of the Shareholder's Agreements as both debt and equity, and

(e) failing to disclose potential claims of Defendant, including (i) derivative claims against Rene Sosa for violating fiduciary duties to Defendant's creditor's by

2

making the Omitted Transfers and (ii) a malpractice claim against Defendant's corporate counsel for advising Defendant to engage in transactions that Defendant now characterizes as usurious (the "**Omitted Causes of Action**").

## REQUISITES, BURDEN AND STANDARD OF PROOF

9. In a Chapter 11 reorganization, the Court may revoke a confirmation order pursuant to 11 U.S.C. § 1144 because it was procured by debtor's fraud in deliberately omitting or misrepresenting information in its petition, schedules and statements. *See id.*

The elements of a claim for fraud are (1) that the debtor or proponent made a materially false representation or omission to the court; (2) that the representation was made with knowledge of its falsity or reckless disregard for the truth; (3) that the representation was made to induce the court's reliance; (4) that the court actually relied upon the representation; and (5) the court entered the confirmation order in reliance on the representation. *In re Sherwin Alumina, LLC*, 952 F.3d 229 (5th Circuit 2020).

10. The burden of proving sufficient facts to sustain a claim of fraud is on the plaintiff. *See In re Beauboeuf*, 966 F.2d 174 (5th Cir. 1992).

11. The plaintiff must prove the fraud by a preponderance of the evidence. *See id.*

12. The Bankruptcy Code defines "claim" as

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

13. The Bankruptcy Code defines "debt" as a "liability on a claim". 11 U.S.C. § 101(12).

14. In contradistinction to a claim on a debt, the Bankruptcy Code defines "equity security" as

(A) share in a <u>corporation</u>, whether or not transferable or denominated "stock", or similar security;

(B) interest of a limited partner in a limited partnership; or

(C) warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subparagraph (A) or (B) of this paragraph.

*See* 11 U.S.C. § 101(16).

15. Thus, a debt requires a claim, *See id*, 11 U.S.C. § 101(5) and (12), while an equity security does not require or give rise to a claim, *see, e.g., Citicorp Real Estate, Inc. infra*; *see also* 11 U.S.C. § 101(16).

16. In bankruptcy proceedings the categories of equity security and claim are mutually exclusive. *See Citicorp Real Estate, Inc. v. PWA, Inc. (In re Georgetown Bldg. Assocs. Ltd. P'ship)*, 240 B.R. 124, 139 (Bankr. D.C. 1999).

## FACTUAL BACKGROUND

*Plaintiff's Investment in Defendant's Stock*

17. On or about April 1, 2019 Defendant issued its Stock Certificate No. 2 (the "**Certificate**") transferring the Shares to the Trust.

18. From that point forward until March 31, 2021 when Defendant filed its amended petition without statements or schedules (Dkt # 1), Defendant and Plaintiff consistently recited that Plaintiff's Shares represented 51% of the issued and outstanding equity of Defendant. *See* Dkt # 19-1 in *Alamo Strategic Manufacturing, Inc. v McKinlay Properties, LLC*, Adv. Proc. No. 21-05105 ("**Defendant's Adversary Proceeding**") at pages 21, 23, 24, 25, 42, 43, 48, 50, 51, 54, 57, 58, 60, 62, 69, 70, 71, 72, 77, 79, 80, 81, 82, 84, 87, 89, 91, 93, 99, 100, 101, 104, 106, 107, 108, 110, 115, 116, 117, 118, 119, 121, 123, 124, 127, 128, 129, 130, 132, 133, 134, 135, 137, 145, 150.

4

19. Defendant also agreed that upon its seeking bankruptcy relief the Shares were to automatically convert from a 51% non-voting beneficial ownership in Defendant held in the Trust to a 51% voting legal ownership interest in Defendant held directly by Plaintiff. *See id* at pages 26, 57, 89, 106 and 123.

20. In addition to issuing the Certificate, Defendant filed its Certificate of Amendment to Certificate of Formation with the Texas Secretary of State on February 4, 2020 to designate the class and rights of the Shares (the "**Certificate of Amendment**").

21. The Certificate is attached hereto as Exhibit 22A and the Certificate of Amendment is attached hereto as Exhibit 22B.

22. The documents underlying Plaintiff's purchase of the Shares indicate that Defendant induced Plaintiff to invest in the Shares to provide *capital* into Defendant by purchasing the Plaintiff's Shares by repeatedly reciting that Defendant's Board of Directors determination that Plaintiff's opportunities under certain United States Department of Defense Contracts (the "**DoD Contracts**") were "many multiples greater than the current, and immediate, capital requirements" and that Plaintiff's "opportunities", "substantial opportunities" under the DoD Contracts of Plaintiff required capital investment by Defendant. *See Defendant's Adversary Proceeding,* Dkt # 19-1 at pages 20, 21, 42, 51, 69, 80, 81, 82, 100, 101, 113, 117, 118, 127, 128, 143

23. In order to induce Plaintiff to make and maintain such capital investments in the Non-Voting Shares and to avoid converting those equity securities into voting securities resulting in a loss of control of Defendant by Rene Sosa, Plaintiff repeatedly agreed that it would not "enter into any mortgage, nor borrow, or loan any funds, nor pledge or lien any of the assets" during the term of Defendant's investment except in limited circumstances without the written consent of Defendant, covenants that Defendant repeatedly breached prior to confirmation and which breaches were concealed from Plaintiff. *See Defendant's Adversary Proceeding* Dkt. 19-1 at pages 45, 73, 102, 103, 114, 119, 131, 144.

***Defendant's Chapter 11 Subchapter V Filing***

24. On March 31, 2021 Defendant filed its Chapter 11 Petition.

5

25. On April 1, 2021 Defendant filed amended its Petition.

26. On April 21, 2021 Debtor filed its Schedules and Statement of Financial Affairs.

27. On April 23, 2021, Debtor filed its amendment with respect to creditors in its schedules.

28. On June 9, 2021, Plaintiff filed its Proof of Interest with respect to the Plaintiff's Shares.

29. On June 29, 2021, Defendant filed its proposed Chapter 11 Small Business Subchapter V Plan and its Amended Schedules and Summary.

30. On June 29, 2021, Defendant filed its Plan.

31. On August 16, 2021, the Court conducted a hearing ("**Hearing**") on confirmation of the Plan.

32. At the Hearing, the Court determined that the Debtor had satisfied the requirements of the Code for confirmation.

*Defendant's Fraudulent Omissions and Fraudulent Misrepresentations*

33. Prior to confirmation of the Plan, Defendant engaged in the following fraudulent conduct, acts and omissions in its Petition, Statements and Schedules and in its Plan presented to the Court, the creditors and interested parties:

   a. Defendant failed to disclose to the Court, its creditors and interest holders prior the following material facts prior to confirmation (the "**Fraudulent Omissions**"):

6

(1) the transfer of Class B convertible stock ("**Plaintiff's Shares**") to Mr. Rene Sosa, as Trustee, to be held in a trust (the "**Trust**") for the benefit of Plaintiff;

(2) the creation of a trust (that was not in the ordinary course of business) by Defendant to hold Plaintiff's Shares, whereby Plaintiff is the beneficiary and Rene Sosa is the trustee under which the transfer of Plaintiff's Shares was not disclosed as required in Part 6, Item 13 of Debtor's Statement of Financial Affairs (the "**SOFA**");

(3) the nature of Rene Sosa's ownership of Defendant as being a minority position of equity ownership on a percentage basis at the time of filing;

(4) transfers of equity in Defendant to Plaintiff pursuant to a stock sale contract with equity redemption rights personally guaranteed by Rene Sosa which disclosure should have been made in Part 6, item 13 of Defendant's SOFA;

(5) cash transfers made by Defendant to Plaintiff that benefited Rene Sosa as a guarantor of Defendant's obligations to make such transfers (the "**Omitted Transfers**")[1]. which should have been made in Part 2, Item 4 of Defendant's SOFA;

(6) transfers made by Defendant benefitting Rene Sosa as a guarantor of redemption payments required under agreements by and amongst Plaintiff, Defendant, and Rene Sosa which transfers should have been disclosed in Part 13, Item 30 of Debtor's SOFA (despite such transfer providing value to Rene Sosa by virtue of reducing and/or relieving him of his guaranty obligations);

(7) a viable derivative action held by the Defendant against its principal, Rene Sosa, who caused Defendant to pay redemption payments to equity holders in preference to creditors, thereby violating Defendant's fiduciary duties to its creditors by preferring equity holders over creditors while in the zone of insolvency;

---

[1] If Defendant's allegations against Plaintiff in Defendant's Adversary Proceeding are to be believed, the Omitted Alleged Transfers were in the aggregate amount of $1,972,200.00 which would clearly constitute a material omission in Defendant's pre-confirmation disclosures to the Court.

7

(8) a potential malpractice claim held by defendant against Defendant's attorney who advised it to enter into agreements now asserted by Defendant to be usurious; and

(9) that Rene Sosa owned a minority interest of 49% at the time of filing with the 51% ownership of Defendant being held by Plaintiff in the form of Plaintiff's Shares.

b. Defendant misrepresented to the Court, creditors and interest holders the following material facts prior to confirmation ("**Fraudulent Misrepresentations**", and together with the Fraudulent Omissions, the "**Fraudulent Acts**"):

(1) that Rene Sosa owned 100% of the equity of Defendant, while in fact owning only 49% of the equity of Defendant and holding the other 51% in trust for Plaintiff; and

(2) that Plaintiff's contracts with Defendant were not unsecured, unimpaired debts owed to Plaintiff (the "**Mischaracterized Debts**"), but were actually redemption payments made to Plaintiff, as an equity holder, in preference to creditors.

34. Defendant's Fraudulent Acts deprived the Court, creditors and other parties in interest with the information legally required and necessary to allow proper consideration of the Plan.

35. Defendant knew of the falsity of its Fraudulent Omissions and Fraudulent Misrepresentations or committed its Fraudulent Acts with reckless disregard for the truth.

36. The Defendant committed the Fraudulent Acts with the intent for the Court to rely on its Fraudulent Misrepresentations and Fraudulent Omissions and confirm the Plan.

37. The Court, relying on the Fraudulent Omissions and Fraudulent Misrepresentations of Defendant, entered an order ("**Order**") confirming the Plan on August 23, 2021.

38. Plaintiff, who by virtue of Plaintiff's Shares, had a majority ownership, albeit non-voting, interest in Debtor, made decisions regarding whether and to what extent to participate in the confirmation process for Debtor's Plan based on Defendant's Fraudulent Acts and was harmed by reliance thereon.

# ARGUMENT

### *Defendant Consistently Misrepresented Its Ownership and Misrepresented Plaintiff's Equity Redemption Rights as Debt*

39. Defendant represented under penalty of perjury to the Court, its creditors and its interested parties the following in its pre-confirmation filings:

    a. On March 31, 2021 in its Voluntary Petition (Dkt # 1, Pg. 6, Item 2) Defendant misrepresented Plaintiff's interest as a contingent[2], unliquidated and disputed unsecured claim owed by Defendant in the amount of $350,000 as of the filing date;

    b. On April 13, 2021 in its Statement of Corporate Ownership (Dkt # 36) Defendant failed to disclose the Trust, a separate and distinct entity, despite the fact that the Trust owned 51% of the issued and outstanding equity of Defendant as of the filing date;

    c. On April 21, 2021 in its Schedule E/F Defendant (Dkt # 46, Pg. 18, Item 3.14) Defendant misrepresented Plaintiff's interest to the Court as a contingent, unliquidated and disputed unsecured claim and a loan owed by Defendant in the amount of $340,000;

    d. On April 21, 2021 in its SOFA Defendant failed to disclose the Omitted Alleged Transfers made to Plaintiff, which Omitted Alleged Transfers benefitted Rene Sosa, an insider who guaranteed of such obligations, and which Omitted Alleged Transfers are now complained of by Defendant in Defendant's Adversary Proceeding against Plaintiff;

    e. On June 29, 2021 in Article 4 of its Plan Defendant describes the obligations of Defendant to Plaintiff as Class 6b unimpaired equity that is being extinguished[3] (Dkt # 73, Pg. 9);

---

[2] Defendant makes claims in Defendant's Adversary Proceeding that the obligations of Defendant to Plaintiff result from usury, which claim requires an absolute obligation to pay. Its initial filing and later filings Defendant characterizes the obligations of Defendant to Plaintiff as "contingent". Both statements cannot be true. The obligations of Defendant to Plaintiff cannot be both "absolute" and "contingent".

    f.    On June 29, 2021 in Article 10, Section 1 of its Plan Defendant characterizes Defendant's obligations to Plaintiff both in terms of a creditor and an equity holder by describing claims against Plaintiff including claims for usury, failure to adequately capitalize and declaratory relief regarding the existence and validity of Plaintiff's Shares (Dkt # 73, Pg. 16); and

    g.    On June 29, 2021 in its Amended Schedules and Summary Defendant characterizes its obligations to Plaintiff as debt and not equity by referring to a usury claim against Plaintiff (Dkt. 74, Pg. 7).

***Defendant Misrepresented Rene Sosa's Ownership to the Court and Creditors***

40.    Defendant never properly disclosed to the Court the nature of Rene Sosa's minority interest in Debtor prior to seeking confirmation of Defendant's plan.

41.    At the time of filing Rene Sosa owned 49% of Defendant. *See Defendant's Adversary Proceeding* Dkt # 19-1 in Defendant's Adversary Proceeding at pages 21, 23, 24, 25, 42, 43, 48, 50, 51, 54, 57, 58, 60, 62, 69, 70, 71, 72, 77, 79, 80, 81, 82, 84, 87, 89, 91, 93, 99, 100, 101, 104, 106, 107, 108, 110, 115, 116, 117, 118, 119, 121, 123, 124, 127, 128, 129, 130, 132, 133, 134, 135, 137, 145, 150.

42.    Prior to confirmation Defendant never disclosed to the Court that upon Defendant's seeking bankruptcy relief Plaintiff's Shares were to automatically convert from a 51% non-voting beneficial interest in Defendant held in the Trust to a 51% voting legal interest in Defendant held directly by Plaintiff. *See id* at pages 26, 57, 89, 106 and 123.[4]

43.    Defendant never disclosed to the Court the terms of the agreements underlying

---

[3] The Plaintiff's Shares cannot be both unimpaired and extinguished under the plan. To leave an interest holder unimpaired, the holder must either "retain all of its state law rights or (a) cure pre-petition defaults, (b) reinstate the original maturity date, (c) compensate the holder for pecuniary losses arising out of non-monetary defaults, (d) compensate the holder for reliance damages resulting from acceleration and (e) not otherwise alter the holder's non-bankruptcy rights." *See In re Moody Nat'l SHS Houston H, LLC*, 426 B.R. 667 (So. Dist. of Texas 2010); *see also* 11 U.S.C. § 1124. In short, under Defendant's Plan, Plaintiff's Shares cannot be both "unimpaired" and "extinguished."

[4] Review and disclosure of the terms of these agreements was necessary to determine and properly characterize the nature Defendant's obligations to Plaintiff as debt or equity securities.

10

the contractual relationships between Defendant and Plaintiff which terms are necessary and essential to allow the obligations of Defendant to Plaintiff to be properly characterized as debt or equity issuer.

44. Instead, Defendant merely provided for the extinguishment of Plaintiff's equity interest in Defendant in its Plan as presented and confirmed. *See* Dkt # 73, Pg. 9.

45. Thus, the Court confirmed Defendant's Plan based on false disclosures, including the failure to disclose an alleged $1,972,200 in Omitted Alleged Transfers that Defendant now attempts to characterize as fraudulent transfers in Defendant's Adversary Proceeding.

46. Defendant made the false disclosures to the Court with knowledge of their falsity or reckless disregard for the truth of such disclosures for the purpose of having the Court rely on the false disclosures and confirm the Plan.

### *Defendant's Omissions and Nondisclosures Constitute Fraud For Purposes of 11 U.S.C. § 1144.*

Under § 1144 of the Code, on request of a party in interest within 180 days after the date of entry of the confirmation order, the court may, after notice and hearing, revoke confirmation after a showing that the confirmation was achieved by fraud. *See* 11 U.S.C. § 1144. According to relevant caselaw, nondisclosure can justify revocation of a confirmation order for fraud if nondisclosure was (1) an intentional omission; (2) by party with duty to disclose; (3) of facts that would be material to finding that party complied with confirmation requirements; (4) that were withheld so that the court would find party complied with confirmation requirements; and (5) consequence of nondisclosure was that the court entered a confirmation order. *Tenn-Fla Partners v. First Union Nat. Bank of Florida*, 229 B.R. 720 (W.D. Tenn. 1999), aff'd, 226 F.3d 746, 36 Bankr. Ct. Dec. (CRR) 216, 2000 Fed App. 0326P (6th Cir. 2000).

47. Furthermore, failure to disclose material information known by an entity that is obligated to make such disclosure can be a basis for revocation of a confirmation order. *See In re Ogden Modulars, Inc.*, 180 B.R. 544, 27 Bankr. Ct. Dec. (CRR) 63 (Bankr. E.D. Mo. 1995).

11

48. Had Plaintiff been aware that the Omitted Transfers would later be alleged to be Fraudulent, the Plaintiff would have asserted its rights and attempted to remove Mr. Rene Sosa as CEO of Defendant based on Mr. Sosa's breaches of his fiduciary duties to Defendant's creditors and his causing the Defendant to breach its contractual obligations to Plaintiff.

49. Indeed, Rene Sosa's motivation was clear – to retain control of Defendant rather than honor Defendant's fiduciary duties to its creditors while in the zone of insolvency.

50. Incredibly, in direct and complete contradiction of the facts presented in its petition, statements and schedules, Defendant now completely reverses its position and complains in Defendant's Adversary Proceeding that the Omitted Transfers were fraudulent conveyances.

51. The Court is now presented with a Plan that was improperly confirmed based on misrepresentations and omissions of Defendant that Defendant either knew were false or presented with reckless disregard of the truth.

52. There is only benefit to Rene Sosa for Defendant to omit the existence of Plaintiff's direct ownership of the Shares or beneficial ownership of the Shares by the undisclosed Trust.

53. Defendant not only misrepresented that Rene Sosa is the only owner of Defendant, but Defendant also used Plan language in an attempt to extinguish the interests of equity holders other than Rene Sosa.

54. Defendant's actions show a clear lack of good faith, listing the Plaintiff in a manner best suited to Defendant at different intervals of the bankruptcy filing, and in a way that misrepresents and omits material information.

## CONCLUSION

55. This action is brought within 180 days of entry of the Order of Confirmation.

56. Confirmation of the Plan was procured by the Fraudulent Acts of Defendant. Had Defendant not acted fraudulently, the Plan would not have satisfied the requirements for

12

confirmation under section 1191 of the Code and the Plan would not have been confirmed.

57. The Order confirming the Plan, including any discharges under the Plan, should be revoked.

58. No party's rights obtained in good faith on reliance of entry of the Order are or will be affected or prejudiced by revoking the Order or discharge of the Debtor.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant:

A. Revoking the Order confirming the Plan;
B. Revoking the discharge of the Defendant; and
C. For such other and further relief as the Court deems just and proper.

Dated: February 18, 2022

Respectfully submitted,

/s/ Heidi McLeod
Heidi McLeod
Heidi McLeod Law Office, PLLC
3355 Cherry Ridge, Ste. 214
San Antonio, Texas 78230
T.: (210) 853-0092
F.: (210) 853-0129
TSBN:
heidimcleodlaw@gmail.com
Attorney for Plaintiff

## EXHIBITS

EXHIBIT 22A – DEFENDANT'S STOCK CERTIFICATE NO. 2 TRANSFERRING THE SHARES TO THE TRUST ATTACHED

EXHIBIT 22B -- DEFENDANT'S CERTIFICATE OF AMENDMENT TO CERTIFICATE OF FORMATION WITH THE TEXAS SECRETARY OF STATE ON FEBRUARY 4, 2020 ATTACHED



EXHIBIT 22A

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Ruth R. Hughs
Secretary of State

## Office of the Secretary of State

### CERTIFICATE OF FILING
### OF

### Alamo Strategic Manufacturing, Inc.

The undersigned, as Secretary of State of Texas, hereby certifies that a Certificate of Amendment for the above named entity has been received in this office and has been found to conform to the applicable provisions of law.

ACCORDINGLY, the undersigned, as Secretary of State, and by virtue of the authority vested in the secretary by law, hereby issues this certificate evidencing filing effective on the date shown below.

Dated: 02/04/2020

Effective: 02/04/2020



Ruth R. Hughs
Secretary of State

### EXHIBIT 22B

Phone: (512) 463-5555
Prepared by: Melissa Kerr

*Come visit us on the internet at https://www.sos.texas.gov/*
Fax: (512) 463-5709
TID: 10303

Dial: 7-1-1 for Relay Services
Document

| Form 424 (Revised 05/11) Submit in duplicate to: Secretary of State P.O. Box 13697 Austin, TX 78711-3697 512 463-5555 FAX: 512/463-5709 Filing Fee: See instructions |   **Certificate of Amendment** | F I L E D In the Office of the Secretary of State of Texas FEB 0 4 2020 Corporations Section |

## Entity Information

The name of the filing entity is:

Alamo Strategic Manufacturing, Inc.

State the name of the entity as currently shown in the records of the secretary of state. If the amendment changes the name of the entity, state the old name and not the new name.

The filing entity is a: (Select the appropriate entity type below.)

☒ For-profit Corporation  ☐ Professional Corporation
☐ Nonprofit Corporation  ☐ Professional Limited Liability Company
☐ Cooperative Association  ☐ Professional Association
☐ Limited Liability Company  ☐ Limited Partnership

The file number issued to the filing entity by the secretary of state is: _____
The date of formation of the entity is: September 20, 2018

## Amendments

### 1. Amended Name

(If the purpose of the certificate of amendment is to change the name of the entity, use the following statement).

The amendment changes the certificate of formation to change the article or provision that names the filing entity. The article or provision is amended to read as follows:

The name of the filing entity is: (state the new name of the entity below)

The name of the entity must contain an organizational designation or accepted abbreviation of such term, as applicable.

### 2. Amended Registered Agent/Registered Office

The amendment changes the certificate of formation to change the article or provision stating the name of the registered agent and the registered office address of the filing entity. The article or provision is amended to read as follows:

Form 424                                                    6

Registered Agent
(Complete either A or B, but not both. Also complete C.)

☐ A. The registered agent is an organization (cannot be entity named above) by the name of:

_____

**OR**

☐ B. The registered agent is an individual resident of the state whose name is:

_____
*First Name*          *M.I.*          *Last Name*                    *Suffix*

The person executing this instrument affirms that the person designated as the new registered agent has consented to serve as registered agent.

C. The business address of the registered agent and the registered office address is:

                                                            TX
_____
*Street Address (No P.O. Box)*          *City*          *State*    *Zip Code*

### 3. Other Added, Altered, or Deleted Provisions

Other changes or additions to the certificate of formation may be made in the space provided below. If the space provided is insufficient, incorporate the additional text by providing an attachment to this form. Please read the instructions to this form for further information on format.

Text Area (The attached addendum, if any, is incorporated herein by reference.)

☒ **Add** each of the following provisions to the certificate of formation. The identification or reference of the added provision and the full text are as follows:

Fundamental Business Transactions as defined by the Texas Business Organizations Code Section 1.002(32) shall be made by a vote of 51% of the Class "A" Shares.

☒ **Alter** each of the following provisions of the certificate of formation. The identification or reference of the altered provision and the full text of the provision as amended are as follows:

Form 424                                    7

Article 4 - Authorized Shares

The total number of shares the corporation is authorized to issue and the par value of each such shares, or a statement that such shares are without par value, is set forth below.

| Number of Shares | Par Value | Class | Series |
|---|---|---|---|
| 10,000,000 | Without Par Value | A | N/A |
| 10,000,000 | Without Par Value | B | N/A |

Supplemental Provisions/Information

The corporation is authorized to issue a total of 10,000,000 shares, which may be distributed among Class A and Class B in any manner so long as there is a minimum of 1 share of Class A and there are not more than 10,000,000 shares issued in the aggregate.

The corporation has two classes of shares: Class A and Class B. Both classes of shares shall have all the rights of a shareholder with the exception that Class B shares do not have voting rights or the right to participate in a quorum of shareholders for the purpose of determining a quorum for a meting of the shareholders.

There are no series of the corporation's shares and no series of any class of shares.

☐ **Delete** each of the provisions identified below from the certificate of formation.

## Statement of Approval

The amendments to the certificate of formation have been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

### Effectiveness of Filing (Select either A, B, or C.)

A. ☒ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

### Execution

Form 424　　　　　　　　　　　　　　　　　　8

- The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: 2-3-20

By: _____

*Signature of authorized person*

Rene Sosa, President
Alamo Strategic Manufacturing, Inc.

*Printed or typed name of authorized person (see instructions)*